IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REYNA CAPITAL CORPORATION,<br>an Ohio Corporation<br><br>Plaintiff,<br><br>v.<br><br>LML TECHNOLOGIES, INC.,<br>formerly known as,<br>LEASE MARKETING, LTD.,<br>an Illinois Corporation,<br><br>Defendant. | No. 03 C 6396<br><br>Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Defendants counterclaim [Doc. No. 94]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion is denied.

### I. FACTS

To the extent possible, the following statement of facts is either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1 ("LR 56.1"). Reyna and LML agree on very little. Their memoranda and LR 56.1 statement of material facts and responses show that the parties essentially disagree on many of the material facts.

Reyna Capital Corporation ("Reyna") filed this action against Defendant LML Technologies, Inc. ("LML") for allegedly breaching the terms of a February 2, 2000 contract entitled Seller Private Label Master Agreement (the "Agreement") (Reyna's LR 56.1 Statement, Ex. A). Under the terms of the Agreement, Plaintiff purchased leases that Defendant had entered

into with automobile dealerships, which would have entitled Plaintiff to collect on payments due originally to Defendant under the leases. (Reyna's LR 56.1 Statement ¶ 11). At the time of the Agreement, LML was in the business of leasing computer hardware and software, such as Lease Link, Wizard, and Guest Track. (Reyna's LR 56.1 Statement ¶ 8). Reyna provides financing to businesses like LML. (Reyna's LR 56.1 Statement ¶ 7). The Agreement's terms set out various obligations LML agreed to undertake, and Reyna alleges that LML has breached these terms. In the Agreement, LML warranted that the automobile dealerships who leased LML's products (hereinafter "lessees") did not have any defense, offset or counterclaim as to the enforcement of the lease and that LML was not aware of any facts indicating the uncollectability of the leases. (Reyna's LR 56.1 Statement, Ex. A, at Ex. A ¶¶ 4(g), 4(h)). LML also agreed to provide all manufacturers' warranties with regard to the equipment to the lessee and agreed to indemnify Reyna from any liability as to the "functionality" of the equipment. (Reyna's LR 56.1 Statement, Ex. A, at Ex. A ¶ 5(f)). Reyna alleges that LML breached the terms of the Agreement by failing to provide the lessees with functioning software and by failing to service and maintain the software and hardware. (Reyna's Mem. in Supp. of its Mot. at 3). Some of the lessees have complained about the LML products, believing that the products did not work and/or were not able to be fully integrated into their existing equipment. (Reyna's LR 56.1 Statement, Ex. A, at Ex. A ¶¶ 24-40). As a result, some of the lessees did not pay Reyna (as the assignee) for the LML products. (Reyna's Mem. in Supp. of its Mot. at 4).

LML has asserted a counterclaim also for breach of the Agreement. (LML's Counterclaim) [Doc. No. 31]. LML states that Reyna breached the Agreement by: (1) failing to indemnify LML against lessee lawsuits; (2) failing to notify LML of payout amounts to lessees;

and (3) failing to file its lawsuits against certain lessees in DuPage County, Illinois (LML's Mem. in Opp'n. to Reyna's Mot. at 6-7). The facts suggest that Reyna may not have fully complied with the Agreement with respect to its obligations under the Agreement. (*See* Reyna's LR 56.1 Statement, Ex. A, at Ex. A ¶¶ 3, 9 and 12(f)). LML alleges that Reyna did not notify LML before it settled its claims against Beach Automotive and Competition Chevrolet. (LML's Mem. in Opp'n. to Reyna's Mot. at 6-7). Additionally, LML alleges that Reyna also did not allow LML to remove equipment from certain dealers who had LML equipment and failed, at times, to send delinquency reports to LML in a timely fashion. (LML's Mem. in Opp'n. to Reyna's Mot. at 6-7). *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *O'Neal v. City of Chicago*, 392 F.3d 909, 910-911 (7th Cir. 2004). Justifiable inferences mean reasonable inferences, "not every conceivable inference." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (internal citation omitted). A fact is material if it is outcome determinative. *Anderson*, 477 at 248. An issue is genuine "only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

3

Reyna bears the burden of identifying those portions of the record that it believes demonstrate the lack of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). LR 56.1 requires that Reyna submit a separate statement of undisputed material facts that would entitle it to judgment as a matter of law; the statement should be listed in short numbered paragraphs with citations to the record to support those factual assertions. LR 56.1(a)(3). All the material facts in the LR 56.1 statement will be deemed admitted unless LML submits a statement controverting those facts. *United States v. Funds in the Amount of $30,670*, 403 F.3d 448, 454 (7th Cir. 2005); *see also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (stating that "[c]itations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate").

LML cannot rest on the mere allegations or denials contained in its pleading to overcome a motion for summary judgment. LML must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322-323. This Court will not make "credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

"[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson*, 477 U.S. at 248. On the other hand, Rule 56(c) requires entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories,

and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Only if the motion is supported by a prima facie case showing that the moving party is entitled to judgment as a matter of law, does the party opposing the motion have to show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Patrick v. Jasper County*, 901 F.2d 561, 564-566 (7th Cir. 1990).

### III. Parties' Objections to the Evidence

Reyna raises evidentiary objections to LML's submissions. One of LML's most supportive factual submissions is the declaration of Mark Simmons, attached to LML's opposition memorandum. (LML's Resp. to Reyna's LR 56.1 Statement, Ex. 24). Reyna points out that the declaration was not executed by a person with personal knowledge and should be disregarded. Rule 56(e) of the Federal Rules of Civil Procedure provides that when affidavits or declarations are used to support or to oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P 56(e). The Simmons declaration was executed by the founder of LML and the author of the LML software at issue. The Court finds that many of the statements made in the declaration are based upon Simmons' own personal knowledge as founder of LML and/or acquired by his review of the relevant documents pertaining to the transactions between LML and the lessees contained in LML's files. To the extent this Court relies upon the Simmons declaration, this Court finds those portions admissible as based on the personal knowledge and business records exceptions to the hearsay rule as contained in Federal Rule of Evidence 803(6). *See United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984) ("The business records exception

5

to the hearsay rule clearly does not require that the witness have personal knowledge of the entries in the records. The witness need only have knowledge of the procedures under which the records were created.").

Reyna also notes that LML's "corrected" LR 56.1(b)(3)(C) statement of additional facts [Doc. No. 119] is improper as it does not correct statements but adds substantive facts without leave of the Court. Reyna is correct. LML failed to seek Court approval before filing what can only be described as substantive additions to its statement of additional facts. The Court will not consider any additional facts presented in the LML's opposition brief that were not originally presented in its LR 56.1(b)(3)(B) and (C) statements.

Likewise, LML has a broad range of objections to Reyna's deposition testimonials. LML claims that many of the deposition testimonials relied upon by Reyna are conclusions, not supported by personal knowledge, and are made by witnesses incompetent to render an opinion on computer software and hardware functions. While it is true that many, if not most, of the Reyna deposition testimonials are not from computer experts, the Court will not disregard their testimony on that basis. To the extent the witness has personal knowledge of the events in question, the testimony will be received. Lay persons may testify to events and circumstances, but their ability to testify as to the causation of computer failures depends on that person's knowledge and experience working with software and computers. LML can deny that testimony (and they do), but it is a question for the fact-finder to decide who is telling the truth. Disregarding particular testimony pointed out by Reyna in favor of other testimony cited by LML would require determining witness credibility; this is the function of a fact-finder at trial, not judge at the summary judgment phase. *See Anderson*, 477 U.S. at 255.

6

## IV. ANALYSIS

Federal district courts in a diversity matter apply the substantive law of the forum state which, in this case, is Illinois law. *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2000). On the counterclaim, to state a breach of contract claim under Illinois law, LML must establish: (1) the existence of a valid and enforceable contract; (2) that LML has satisfied all of its contractual obligations; (3) that Reyna has breached the contract; and (4) that LML has suffered damages as a result. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). The intent of the parties is integral in determining the effect and the obligations under the contract. *Id.*

In this case, there is no dispute that a valid and enforceable contract exists between the parties. All other elements of a breach of contract are disputed. Reyna believes that it should prevail as a matter of law on LML's counterclaim. Although Reyna chose not to file a summary judgment request on its breach of contract claim, Reyna's present motion requires part of the focus to be on whether Reyna breached the Agreement. Before reaching that issue, the Court will first determine whether there are any disputed issues of material fact on LML's obligations under the Agreement.

In order to survive summary judgment, LML must point to some material facts in dispute on the counterclaim issue. In its counterclaim, LML alleges that Reyna breached the Agreement by: (1) failing to indemnify LML against lessee lawsuits; (2) failing to notify LML of payout amounts to lessees; and (3) failing to file its lawsuits against certain lessees in DuPage County, Illinois. Reyna believes that it should prevail as a matter of law on LML's counterclaim because LML cannot satisfy prongs two through four of its breach of contract action.

7

Whether There Has Been a Breach of the Agreement

When interpreting the language of a contract under Illinois law, the Court follows the four corners rule. *Air Safety v. Teachers Realty Corp.*, 185 Ill.2d 457, 462, 236 Ill.Dec. 8, 706 N.E.2d 882 (Ill. App. Ct. 1999). "If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law" without resort to extrinsic evidence. *Id.* Only if the language is susceptible to more than one interpretation, does the court turn to extrinsic evidence to resolve the ambiguity. *Id.* "The primary object of the construction of a contract is to give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to any particular words used in expression thereof." *Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 283, 154 N.E.2d 683 (Ill. 1958). Interpretation of each provision of a contract is to be done in light of the contract as a whole and is "not to be determined by reference to particular words or isolated phrases." *Illini Fed. Sav. & Loan Ass'n v. Elsah Hills Corp.*, 112 Ill.App.3d 356, 361, 68 Ill.Dec. 340, 445 N.E.2d 1193 (Ill. App. Ct. 1983). And, "[t]he terms of a contract should be given their natural and ordinary meaning." *Meeker-Magner Co. v. Globe Life Ins. Co.*, 152 Ill.App.3d 534, 105 Ill.Dec. 569, 571, 504 N.E.2d 854, 856 (Ill. App. Ct. 1987).

The crux of the disputed facts in this case concern alleged complaints made by dealerships on the underlying leases. The alleged complaints form, in large part, the basis for Reyna's amended complaint against LML. LML, on the other hand, argues that Reyna breached the Agreement in failing to indemnify LML for costs incurred in lawsuits, for accepting certain payoffs without notification to LML, for providing untimely delinquency reports, and for unreasonably withholding permission to remove equipment from nonpaying lessees. In order to

8

survive summary judgment LML must point to some material facts in dispute on the counterclaim issue.

## LML's Duties Under the Agreement

Under the Agreement, Reyna argues that it "received the rights to all payments made by the dealers under the Underlying Leases," while "LML retained various duties and responsibilities, and provided various warranties related to the Underlying Leases." (Reyna's Mem. in Supp. of its Mot. at 2). Specifically, the Agreement sets forth LML's relevant warranties and responsibilities to Reyna concerning the leases at issue:

> Paragraph 4(b): [LML's] Equipment is fully and correctly described . . . and has been delivered to the Lessee . . . and has been accepted.
>
> Paragraph 4(g): The Lessee has and shall have no defense, offset or counterclaim as to the enforcement of the Lease arising out of the conduct of [LML] . . . [LML] is not in default in any of the obligations to the Lessee, except as previously disclosed to [Reyna].
>
> Paragraph 4(h): [LML] does not know of any fact which indicates the uncollectability of the Leases.
>
> Paragraph 5(a): At the request of [Reyna] of the Lessee [LML shall] provide . . . full, complete and adequate service for the relevant Equipment in conformity with standard trade practices.
>
> Paragraph 5(b): Take such action as necessary or as [Reyna] may reasonably request to evidence and perfect this Agreement and [Reyna's] rights contemplated hereby.
>
> Paragraph 5(d): [LML will] not repossess any Equipment . . . from Lessee without prior consent of [Reyna].
>
> Paragraph 5(f): Provide all manufacturer's warranties with regard to the Equipment to the Lessees, and [LML will] . . . indemnify [Reyna] from any liability as to the functionality of the Equipment.

(Reyna's LR 56.1 Statement, Ex. A, at Ex. A ¶).

9

Although LML agrees that these provisions are set forth in the Agreement, they argue that these warranties and representations are effective only as to the date of the assignment to Reyna. LML also contends that to adequately evaluate whether LML met its obligations under the Agreement this Court must review the underlying leases to determine whether questions of fact exist on LML's warranties under the Agreement. (LML's Mem. in Opp'n. to Reyna's Mot. at 8-10).

Reyna provides a litany of deposition testimonials to support its argument that LML failed to meet its obligations. (Reyna's LR 56.1 Statement ¶¶ 24-40). Specifically, Reyna argues that LML: (a) failed to provide software to some of the lessees (*Id.* at ¶ 24); (b) failed to provide functioning software to the lessees (*Id.* at ¶¶ 27, 33, 34, 36, 38); (c) failed to provide functioning hardware to the lessees (*Id.* at ¶¶ 31, 32, 39); (d) failed to provide software that integrated with the lessees' existing software (*Id.* at ¶¶ 26, 27, 29, 32, 35, 40); (e) failed to provide adequate customer service to the lessees (*Id.* at ¶¶ 24, 25, 34); (f) provided software that caused the lessees' computers to fail (*Id.* at ¶¶ 25, 30, 37); (g) provided software that provided inaccurate lease rates/lending information to lessees (*Id.* at ¶¶ 28, 33, 35); (h) provided software that failed to give bank rate updates (*Id.* at ¶¶ 30, 37); (9) repossessed equipment from lessees without Reyna's consent (*Id.* at ¶ 32).

In response, LML argues that: (a) that the warranties and representations in the Agreement are effective only as to the date of the assignment to Reyna (LML's Mem. in Opp'n. to Reyna's Mot. at 8-10); (b) Reyna fails to point to any paragraph in the Agreement in which LML made representations about the software being able to fully function for each lessee (*Id.* at 5); (c) it made no representations in the Agreement concerning the ability of its software to fully

10

integrate with existing software used by lessees (*Id.* at 5-6); (d) some lessees signed a delivery and acceptance agreement that provided the lessee agreed the equipment "has been fully delivered to the leasing customer, has been fully installed, has been inspected and tested" and is "operating to the satisfaction" of the lessee (LML's Resp. to Reyna's LR 56.1 Statement, Ex. 27); (e) some lessees signed leases that required them "to make all payments . . . regardless of any inability of Customer to use the Equipment" (*See id.* at Exs. 34 ¶ 8; 52 ¶ 8; 70 ¶ 8; 73 ¶ 8; 76 ¶ 8; 94 ¶ 8; 82 ¶ 8); (f) Reyna's witnesses lack personal knowledge (*See id.* at ¶¶ 19, 28, 45, 48, 53, 63, 67, 78, 85); (g) lessee claims are barred by equipment lease and software license (*See e.g., id.* at ¶ 48); (h) lessees refused to pay Reyna for reasons unrelated to issues with LML's products *(See e.g., id.* at ¶ 48); and (i) lessees used LML's products (*See e.g., id.* at ¶ 48).

Importantly, Reyna does not argue that LML breached its obligation with respect to all of the lessees.[1] Rather, Reyna asserts that LML "may claim minimum satisfactory performance for a few dealers [lessees]" but "most" lessees did not have a "functioning and serviced product." (Reyna's Mem. in Supp. of its Mot. at 7).

<u>Failure to Provide Adequate Software to Some of the Lessees</u>

Reyna points to various portions of the record to demonstrate LML's failure to provide adequate product or service to lessees under the Agreement. (*See* Reyna's LR 56.1 Statement ¶¶ 24-25, 32-35, 37 and 38). LML argues that summary judgment is inappropriate because two of the warranties at issue — that the lessees "ha[ve] and shall have no defense, offset or counterclaim . . . arising out of [LML's] conduct" (Reyna's LR 56.1 Statement, Ex. A, at Ex. A ¶

---

[1] The Simmons declaration suggests that Reyna financed approximately 1,500 leases under the Agreement. (LML's Resp. to Reyna's LR 56.1 Statement, Ex. 27 ¶ 54). Only about two dozen are at issue in this case.

11

5(g)) and that "[LML] does not know of any fact which indicates the uncollectability of the Lease" (*Id.* at ¶ 5(h)) – should both be read as warranties made only effective as of the date of assignment. Thus, if the facts establish that any problems with LML's product were not in existence or actionable on the date of assignment to Reyna, then, LML argues, there is no obligation under these warranties. Reyna does not address this contention in their pleadings.

Instead Reyna urges, in effect, a "plain reading" interpretation of LML's warranties under the Agreement. Consequently, if LML was not providing adequate product or service to the lessees then it would be a breach of the warranties. However, LML points out that the language of the warranties must be read in light of the various lease terms with the dealers.[2] For example, Reyna relies upon the Blue Ridge Mazda lessee testimony to support its claim of breach. The Blue Ridge Mazda deponent testified that the Wizard and Guest Track systems never worked and resulted in the shut down of its system for three days. (Reyna's LR 56.1 Statement, Ex. D at 32-35; Ex. D, at Ex. 14). But, LML points out that this would not be a valid defense to nonpayment because LML's lease agreement with Blue Ridge Mazda provides that the lessee "agrees that its obligations under the Agreement, including without limitation, the obligation to make all payments hereunder, is irrevocable and shall not abate for any reason whatsoever and shall

---

[2] Again, Reyna fails to address LML's reliance on the underlying contracts at all. Given the rather straightforward language in some of the underlying leases -- even a failure of the LML product would apparently not entitle the lessee to a defense. Thus, LML's reliance on the underlying leases is a factual assertion that relates to whether they breached paragraphs 4(g) and 4(h) of the Agreement. Likewise, LML's reliance on the "clickwrap" and "shrinkwrap" agreements contained in their software product is relevant to determine whether LML breached its warranties under the Agreement. The "clickwrap" and "shrinkwrap" agreements required each lessee to maintain updated technology (such as adequate connection devises and protection against virus attacks) to ensure an appropriate operating environment for the software. If the lessees did not abide by this, there would be, under LML's argument, no defense to payment on the lease obligation. (LML's Resp. to Reyna's LR 56.1 Statement, Exs. 24, 28).

continue in full force and effect regardless of any inability of Customer to use the Equipment or Licensed Programs. . . ." (LML's Resp. to Reyna's LR 56.1 Statement, Ex. 34, ¶ 8).

Further, LML sets out factual disputes with respect to Reyna's assertions that the lessees complained of LML's product and Reyna fails to support several of the factual assertions it makes it in its LR 56.1 Statement. For example, in the first paragraph detailing complaints that individual dealerships had with LML's products, Reyna asserts that Beach Automotive never received promised software from LML. (Reyna's LR 56.1 Statement ¶ 24). However, the twelve pages of deposition testimony that Reyna cites in support of this proposition only demonstrate that there were delays relating to the installation of the software. *Id.* at 9, 46-57. The testimony fails to establish that the dealership never received the software. *Id.* Additionally, in Paragraph 40 of its LR Rule 56.1 Statement, Reyna alleges that the "LML system at the [Bob Valenti Chevrolet] dealership never integrated with the already existing software at the dealership." *Id.* at ¶ 40. Reyna cites Reyna's Exhibit S, pp. 42-47, for this proposition. *Id.* However, Reyna only submitted pages 42-43 of Pl.'s Exhibit S to the Court. *Id.* at Ex. S. The two pages submitted do not support Reyna's factual assertion in Paragraph 40. *Id.*

When Reyna supports some of the factual assertions made in its LR Rule 56.1 Statement, LML disputes those assertions. For example, in Paragraph 35 of its LR Rule 56.1 Statement, Reyna argues that the "LML product [that Maurice Sopp Chevrolet received] never integrated with the pre-existing software and never provided the accurate lending information that LML had promised it would." *Id.* at ¶ 35. LML counters that Maurice Sopp Chevrolet signed a delivery and acceptance agreement that states "[t]he equipment described in the lease agreement has been fully delivered to the leasing customer, has been fully installed, has been inspected and tested by

13

the Leasing Customer and is operating to the satisfaction of the Leasing Customer." (LML's Resp. to Reyna's LR 56.1 Statement, Ex. 27). Additionally, in Paragraph 29 of its LR Rule 56.1 Statement, Reyna argues that the LML system that Farnsworth Chevrolet received "never functioned." (Reyna's LR 56.1 Statement¶ 29). In response, LML cites the "LeaseLink Agreement" entered into by LML and Farnsworth Chevrolet. (LML's Resp. to Reyna's LR 56.1 Statement, Ex. 52). This agreement provides that the dealership agreed "to make all payments . . . regardless of any inability of the Customer to use the Equipment or Licensed Programs." *Id.* at Ex. 52 ¶ 8).

Even if this Court were to determine that LML's warranties are arguably effective as to all the complaints listed by Reyna, factual discrepancies abound. Given, that material issues of fact exist on the issue of whether LML met its obligations under the Agreement, this Court need not review the other aspects of the counterclaim.

When examined in the light most favorable to LML, the evidence submitted does not resolve the issue. Reasonable persons could disagree as to whether LML's actions were in compliance with the Agreement. Given this record, LML's counterclaim will be a question for trial.

### V. CONCLUSION

As explained above, there exists a material question of fact as to whether LML failed to live up to its obligations under the Agreement, precluding summary judgment. Therefore, the Court cannot, as a matter of law, determine that Reyna is entitled to a grant of summary judgment on LML's Counterclaim. Summary judgment is denied.

SO ORDERED.                          ENTERED:

   March 30, 2007                    *Maria Valdez* (signature)

Dated: _____              _____
                                     **HON. MARIA VALDEZ**
                                     **United States Magistrate Judge**